IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| EMERGENCHEALTH, PLLC, § <br> EMERGENCHEALTH SERVICES, PLLC, § <br> EH MANAGEMENT COMPANY, LLC, § <br> JARED MARTINEZ, JOHN HOFFPAUIR, § <br> GARRETT GIBBS § <br> § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> ANESTHESIA ASSOCIATES, PA, § <br> ANESTHESIA ASSOCIATES GROUP, § <br> PLLC § <br> § <br> *Defendants.* § | CIVIL ACTION NO._____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs EmergencHealth, PLLC, EmergencHealth Services, PLLC, EH Management Company, LLC, Jared Martinez, John Hoffpauir, and Garrett Gibbs bring this action against Anesthesia Associates, PA, and Anesthesia Associates Group, PLLC, and respectfully show the Court as follows:

### INTRODUCTION

1. Martinez, Hoffpauir, and Gibbs are Certified Registered Nurse Anesthetists ("CRNAs"). Until recently, these three CRNAs were employed by Anesthesia Associates and provided services at CHRISTUS Southeast Texas - St. Elizabeth ("St. Elizabeth," or the "Hospital"), which is the only Level 3 trauma center between Lake Charles and Houston. For economic reasons that have nothing to do with the Plaintiff CRNAs, Anesthesia Associates unilaterally chose to cancel its service contract with St. Elizabeth, effective August 1, 2025. Yet, Anesthesia Associates now claims that the noncompete covenant in its standard employment

agreement prohibits the Plaintiff CRNAs from *continuing* to provide anesthesia services at St. Elizabeth through EmergencHealth—the entity St. Elizabeth selected to provide replacement anesthesia services at the Hospital. That is so even though the Plaintiff CRNAs had nothing to do with Anesthesia Associates' decision to cancel its service contract with St. Elizabeth; even though the noncompete covenant in its employment agreement does not, on its face, actually restrict them from *continuing to work at the Hospital*; and even though such a covenant would be patently unreasonable (and thus enforceable) under these circumstances, even if it did.

2. Undeterred by the facts or the law, Anesthesia Associates is using the noncompete covenant in its employment agreements to maintain a monopoly on the market for CRNAs in Jefferson County. By prohibiting its CRNAs from working at St. Elizabeth through another provider, Anesthesia Associates has effectively cut off any other sources of CRNAs for EmergencHealth. Indeed, its market power for CRNA services is so complete that Anesthesia Associates recently demanded that EmergencHealth pay it an extortionate $400,000 *per nurse* to "waive" its non-applicable noncompete and allow four other similarly situated CRNAs to continue working at St. Elizabeth.

3. This is very far from a typical case involving noncompete restrictions. All of the CRNAs who work for Anesthesia Associates are bound by noncompetes, and Anesthesia Associates employs all, or nearly all, of the CRNAs in Jefferson County. Since anesthesia care is necessary for all surgery, many invasive cardiac procedures, all endoscopies, all labor epidurals and c/sections, and many other hospital services, these noncompete clauses threaten to broadly interfere with operations at St. Elizabeth, deprive patients of access to care at their chosen hospital and doctors, and harm health care competition and the provision of hospital services in Jefferson County.

4. Defendants' insistence on enforcing the noncompete clauses in the Plaintiff CRNAs' employment agreements is unreasonable under the facts of this case. Anesthesia Associates no longer has any interest whatsoever in the provision of anesthesia services at St. Elizabeth, so it no longer has any interest there to protect through the enforcement of a noncompete covenant. But, more broadly speaking, the use of such noncompete agreements by the dominant employer of CRNAs in Jefferson County violates federal and state antitrust laws, because these noncompetes adversely affect *competition for CRNAs in the relevant market*, even if they are reasonable as between Anesthesia Associates and any individual CRNA employee.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1337(a), and 1367; Sections 4 and 16 of the Clayton Act, U.S.C. §§ 16 and 26; and Section 1 of the Sherman Act, 15 U.S.C. § 1. This Court has exclusive jurisdiction over the claims in this case brought under the Sherman Act and Clayton Act.

6. Venue is proper in the Eastern District of Texas because a substantial part of the acts and conduct charged herein occurred in this District. To be sure, Anesthesia Associates transacts business in this District and is subject to personal jurisdiction therein.

## THE PARTIES

7. Plaintiff EmergencHealth, PLLC ("EH Group"), is a Texas professional limited liability company with its principal place of business in Texas.

8. Plaintiff EmergencHealth Services, PLLC ("EH Services"), is a Texas professional limited liability company with its principal place of business in Texas. EH Services is a wholly owned subsidiary of EH Group.

9. Plaintiff EH Management Company, LLC ("EH Management"), is a Delaware limited liability company with its principal place of business in Texas. EH Management provides management, consulting, administrative, business, billing, and other services to EH Group and its subsidiary, EH Services.

10. EH Group, EH Services, and EH Management are referred to collectively herein as "EmergencHealth".

11. Plaintiff Jared Martinez ("Martinez") is a citizen of the State of Texas and resides in this District.

12. Plaintiff John Hoffpauir ("Hoffpauir") is a citizen of the State of Texas and resides in this District.

13. Plaintiff Garrett Gibbs ("Gibbs") is a citizen of the State of Texas and resides in this District.

14. Martinez, Hoffpauir, and Gibbs are referred to collectively herein as the "Plaintiff CRNAs." In turn, the Plaintiff CRNAs, together with EmergencHealth, are referred to collectively herein as "Plaintiffs."

15. Defendant Anesthesia Associates, PA ("AA") is a Texas professional association with its principal place of business in this District. It may be served with process through its registered agent, Stephen J, Schange, 755 N 11th St., Suite P3600, Beaumont, TX 77702.

16. Defendant Anesthesia Associates Group, PLLC ("AA Group") is a Texas professional limited liability company with its principal place of business in this District. It may be served with process through its registered agent, Stephen J, Schange, 755 N 11th St., Suite P3600, Beaumont, TX 77702.

17. AA and AA Group are referred to collectively herein as "Anesthesia Associates" or "Defendants."

**TRADE AND COMMERCE**

18. Defendants are engaged in interstate commerce and their activities substantially affect interstate commerce. Millions of dollars of Anesthesia Associates' annual revenues for treatment of patients within this District come from sources located outside of Texas, including payments from Medicare and out-of-state commercial payors. Further, Defendants' actions will result in a substantial reduction in competition in the relevant antitrust markets described below, which will substantially affect payments made in interstate commerce by Medicare and commercial payors, as well as payments made by the parties in interstate commerce.

**FACTUAL ALLEGATIONS**

19. Anesthesia Associates is a physician-owned medical group that maintains offices in Beaumont, Texas. According to its website, Anesthesia Associates currently provides anesthesia-related services at Baptist Hospital of Southeast Texas, Beaumont Surgical Affiliates, and Riceland Surgical Center.

20. Until July 31, 2025, Anesthesia Associates also provided services to CHRISTUS Health Southeast Texas. CHRISTUS operates facilities across the Golden Triangle, including (i) St. Elizabeth's Hospital at 2830 Calder Street, Beaumont, Texas 77702; (ii) the Outpatient Pavilion at 755 N. 11th St., Beaumont, TX 77702, and (iii) CHRISTUS Health – West Beaumont at 6025 Metropolitan Drive, Beaumont, TX 77726 ("CHRISTUS facilities").

21. St. Elizabeth is a 431-bed acute care and trauma center. It is the regional leader in spine and orthopedics, cardiology, oncology, general surgery, critical care and trauma, birthing, neonatal care, and bariatrics. Importantly, it is the only Level 3 trauma center in Southeast Texas.

As a Level 3 trauma center, St. Elizabeth must be prepared, 24 hours per day, seven days per week, to treat severely injured patients who require emergency surgeries. Virtually all of the service lines and specialties that an emergency patient coming to a Level 3 trauma center require anesthesia. It is thus critically important that St. Elizabeth has a sufficient number of CRNAs available to handle not only scheduled surgeries, but also unscheduled emergencies.

22. Prior to August 1, 2025, CHRISTUS contracted with Anesthesia Associates to provide anesthesia coverage at CHRISTUS's facilities. Part of that coverage included Anesthesia Associates providing a sufficient number of CRNAs to meet CHRISTUS's needs. CRNAs are authorized to administer anesthesia to patients without an anesthesiologist, or even a medical doctor, present, though they work under the supervision of medical doctors.

23. The Plaintiff CRNAs were formerly employed by Anesthesia Associates. Each of them had an employment agreement with Anesthesia Associates that contained a putative covenant not to compete, located in Section 11.4 (the "Employee Agreements"). That provision stated:

> **11.4 Covenant Not to Compete**
>
> In consideration of Employer's disclosure to Employee of Confidential and Proprietary Information and the provision of specialized training and knowledge relating to the services to be provided by Employee under this Agreement, Employee hereby covenants and agrees that for a period of three (3) years immediately following the termination of this Agreement and Employee's employment with Employer, Employee shall not, directly or indirectly, in any capacity whatever, practice nursing as a CRNA, or provide CRNA services, at any physician office, hospital, ambulatory surgical center, or other health care facility that is located within a twenty (20) mile radius of each physician office, hospital, ambulatory surgical center, and other health care facility at which Employee provided CRNA services as an employee of Employer at any time during the Employment Period.

24. Section 11.4, on its face, only prevents the Plaintiff CRNAs from practicing nursing as a CRNA, or providing CRNA services, "within a twenty (20) mile radius of each physician office, hospital, ambulatory surgical center, and other health care facility at which [the four CRNAs] provided CRNA services…" As with virtually all restrictive covenants, the intent of this provision was plainly to ensure that—while Anesthesia Associates was continuing to provide services to CHRISTUS—the Plaintiff CRNAs would be prohibited from competing with Anesthesia Associates by working at *other, non-CHRISTUS* facilities located within 20 miles of the **CHRISTUS** facilities where the Plaintiff CRNAs worked.

25. Unhappy with the economics of its arrangement, on March 31, 2025, AA President Gerald Callas, M.D. F.A.S.A. ("Dr. Callas") wrote a letter to CHRISTUS explaining that Anesthesia Associates would be terminating the agreement between it and CHRISTUS effective August 1, 2025. Callas confirmed the termination in a follow-up letter in June of 2025.

26. Because of the high number of surgeries performed at CHRISTUS's facilities, it was imperative for CHRISTUS to find another CRNA provider so it could maintain a continuity of care. As such, CHRISTUS worked extremely quickly to identify an alternative provider: EmergencHealth.

27. On July 3, 2025, CHRISTUS contracted with EmergencHealth to provide anesthesia services and coverage, including CRNAs, at CHRISTUS facilities, beginning on August 1, 2025.

28. Because of its size, if Anesthesia Associates' noncompete covenant were enforced against all its current and former CRNAs, it would be impossible for EmergencHealth to compete with Anesthesia Associates in Jefferson County, because there would be no other available CRNAs to hire. In other words, enforcing Anesthesia Associates' noncompetes adversely harms the

*market* for CRNAs in Jefferson County. Indeed, the very threat of enforcement of its noncompete restrictions adversely affects the market for CRNAs in Jefferson County.

### COUNT I
### UNLAWFUL AGREEMENT IN VIOLATION OF SHERMAN ACT § 1

29. Plaintiffs repeat and reallege the allegations of the preceding paragraphs above, as if fully restated herein.

30. Each of the noncompete agreements between Defendants and their CRNAs is a contract, combination, and conspiracy within the meaning of the Section 1 of the Sherman Act, 15 U.S.C. § 1.

31. Defendants possess significant market power in the relevant anesthesia market. Their high market share demonstrates this, the high barriers to entry into the market, and Defendants' ability to exclude competition by the use of their noncompete agreements.

32. The noncompete agreements have had, and if further enforced, would continue to have, substantial and unreasonable anticompetitive effects in the relevant anesthesia markets as set forth above.

33. The noncompete agreements therefore have, and threaten to continue to, unreasonably restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

34. As a direct and proximate result of Defendants' actual and threatened violations of Section 1 of the Sherman Act and the anticompetitive effects thereof, Defendants have suffered and will continue to suffer substantial economic harm.

### COUNT II
### VIOLATIONS OF SECTION 2 OF THE SHERMAN ACT -- MONOPOLIZATION

35. Plaintiffs repeat and reallege the allegations of the preceding paragraphs above, as if fully restated herein.

36. Defendants possess and have possessed monopoly power in the relevant anesthesia markets. This is demonstrated by their high market share, the high barriers to entry into the market, and Defendants' ability to exclude competition by the use of their noncompete agreements.

37. Defendants' threatened actions described above have been and are being undertaken in order to maintain and enhance their monopoly power. These actions have achieved and threaten to continue to achieve that result. Enforcement of the noncompete agreements are exclusionary, because they prevent EmergencHealth from employing Defendants' former anesthesia providers at St. Elizabeth's, for which there are no meaningful alternatives. The CRNAs are harmed because they have been effectively blackballed from working in all of Jefferson County for three years. These actions constitute unlawful monopolization in violation of Section 2 of the Sherman Act. 15 U.S.C. § 2.

38. As a direct and proximate result of Defendants' actual and threatened violations of Section 2 of the Sherman Act, Defendants have suffered will continue to suffer substantial economic harm.

39. As a direct and proximate result of Defendants' actual and threatened violations of Section 1 of the Sherman Act and the anticompetitive effects thereof, Defendants have suffered and will continue to suffer substantial economic harm.

## COUNT III
## REQUEST FOR DECLARATORY JUDGMENT
### (EmergencHealth)

40. Plaintiffs repeat and reallege the allegations of the preceding paragraphs above, as if fully restated herein.

41. EmergencHealth requests a judgment declaring that the noncompete restrictions in Anesthesia Associates' employment agreements with all its current and former nurse

anesthetist employees cannot be enforced to prohibit them from working in Jefferson County, because Anesthesia Associates possesses market power, and its noncompetes measurably reduce competition in the market for CRNAs in Jefferson County.

## COUNT IV
## REQUEST FOR DECLARATORY JUDGMENT
## (Plaintiff CRNAs)

42. Plaintiffs repeat and reallege the allegations of the preceding paragraphs above, as if fully restated herein.

43. There is a real and substantial controversy between the Plaintiff CRNAs and Anesthesia Associates regarding the validity and enforceability of the noncompete provisions in their employment agreements, such that a declaration of rights is both necessary and appropriate under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

44. The restrictive covenants in Plaintiff CRNAs' employment agreements with Anesthesia Associates are governed by Texas Business and Commerce Code § 15.50, *et seq*.

45. Through its correspondence with the CRNAs, Anesthesia Associates has taken the position that the noncompete provisions in the employment agreements are enforceable and prohibit the CRNAs from continuing to work at St. Elizabeth through EmergencHealth.  They do not facially prohibit such conduct, and they are unreasonable and unenforceable if they do.

## JURY DEMAND

46. Plaintiffs hereby demand a trial by jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the Court award Plaintiffs:

    a. Judgment declaring that the noncompete restrictions in the Plaintiff CRNAs' employment agreements cannot be enforced to prohibit them from working at any health care facility where Anesthesia Associates no longer performs any anesthesia-related services, specifically including St. Elizabeth's;

    b.    Judgment declaring that the noncompete restrictions in its employment agreements with all its nurse anesthetist employees cannot be enforced to prohibit them from working in Jefferson County.

    c.    Three times the damages suffered by Plaintiffs as a result of Defendants' exploitation of their monopoly power resulting from the use of the noncompete agreements. This includes the attorneys' fees incurred by EmergencHealth in defending claims by Anesthesia Associates against its former nurse employees in any state court lawsuit;

    d.    Injunctive relief preventing Anesthesia Associates from enforcing its noncompete covenants against any former employee.

    e.    All taxable court costs and reasonable attorneys' fees; and

    f.    Such other relief, at law or in equity, as this Court finds just.

Respectfully submitted,

STURM LAW, PLLC

*/s/ Charles A. Sturm*
CHARLES A. STURM
csturm@sturmlegal.com
*Attorney in Charge*
Texas Bar No. 24003020
712 Main Street, Suite 900
Houston, Texas 77002
(713) 955-1800 [Telephone]
(713) 955-1078 [Facsimile]



OF COUNSEL:

**Edwin Sullivan**
OBERTI SULLIVAN LLP
Texas Bar No. 24003024
712 Main Street, Suite 900
Houston, TX 77002
Telephone: (713) 401-3555
Facsimile: (713) 401-3547
E-mail: ed@osattorneys.com

